**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MATTHEW MICHEL,               )
                                  )
     Plaintiff,              )
                                  )     Case No. 14-cv-8452
               v.              )
                                  )     Judge Robert M. Dow, Jr.
CREDIT PROTECTION ASSOCIATION L.P.   )
and ETAN GENERAL, INC.,      )
                                  )
     Defendants.          )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Matthew Michel brings suit against Defendants Credit Protection Association L.P. ("CPA") and Etan General, Inc. ("Etan") alleging that CPA's calls to Plaintiff violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Fair Debt Collection Practice Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"). Currently before Court are Plaintiff's motion for partial summary judgment [53] and Defendants' motion for partial summary judgment [59]. For the reasons stated below, Plaintiff's motion for partial summary judgment [53] is denied, and Defendants' motion for partial summary judgment [59] is granted. This case is set for further status hearing on September 12, 2017 at 9:00 a.m.

## I.    Background

Plaintiff brings claims against Defendants CPA and CPA's parent company, Etan, alleging violations of the TCPA and FDCPA. [See 12 (Amended Complaint).] Between January 5, 2013 and January 3, 2014, CPA placed multiple calls to Plaintiff's cell phone seeking to collect debts for two separate creditors—Comcast and Commonwealth Edison ("ComEd")—both

of which had accounts with CPA.[1]  The issue at the center of the parties' cross-motions for partial summary judgment is whether CPA can be held liable only for the calls it made on behalf of Comcast, or if it also can be held liable for the calls it made on behalf of ComEd.  Although many facts are in dispute, precluding full summary judgment for either party, the disputed facts do not affect the Court's analysis of the issue presented for partial summary judgment.

In early January 2013, after receiving a call that turned out to be related to his Comcast debt, Plaintiff allegedly called CPA and orally advised CPA to stop calling him.[2]  When CPA called Plaintiff, it frequently left pre-recorded voicemails stating that the call was from a debt collector and that Plaintiff should return the call.  The pre-recorded messages identified the debt through an eleven-digit reference number but did not state the name of the creditor (i.e., whether the call was related to Plaintiff's debt with Comcast or ComEd).  CPA used a dial system operated by Dial Connection to call Plaintiff.  The parties dispute whether Dial Connection is an automated telephone dialing system ("ATDS"), as required for TCPA liability.

Plaintiff alleges that he continued to receive calls from CPA in January and February 2013.  CPA closed its Comcast account in February 2013, and CPA contends that it stopped calling Plaintiff on behalf of Comcast at that time.  It is undisputed that Plaintiff did not receive any calls from CPA in March 2013.  In April 2013, CPA opened an account with ComEd.  Also in April 2013, Plaintiff began receiving calls from CPA again, which continued until January 2014.  CPA contends that the calls to Plaintiff between April 2013 and January 2014 were on behalf of ComEd.

---

[1] Plaintiff argues that CPA has not met its burden of proving that Plaintiff provided his cell phone number to ComEd and that Plaintiff provided consent to ComEd.  This disputed fact does not matter for purposes of the present cross-motions for partial summary judgment.

[2] Defendants contest that Plaintiff asked CPA to stop calling him, but this disputed fact also does not matter for purposes of these cross-motions for partial summary judgment.

Plaintiff alleges that CPA did not advise him that it was seeking to collect debts for two separate creditors. CPA, for its part, contends that it sent letters to Plaintiff on each account and thus Plaintiff was put on notice of CPA's attempts to collect for both Comcast and ComEd. CPA also contends that Plaintiff could have determined which creditor a call referred to by calling CPA back or by cross-referencing the eleven-digit account reference number stated in the voicemail with the letters CPA allegedly sent to Plaintiff.

On June 30, 2016, the parties filed a joint status report explaining that a summary determination on one issue would help streamline the disposition of this case: whether Plaintiff's alleged revocation of consent in early January 2013 means that CPA violated the TCPA for the calls made on behalf of ComEd.[3] This issue is now fully briefed and currently before the Court.

## II.    Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). However, "[c]onclusory allegations alone cannot defeat a motion

---

[3] Plaintiff also raised one additional issue in his motion for partial summary judgment, which is discussed below.

for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

## III.    Analysis

Plaintiff argues that he should be able to recover for all calls made by CPA after he allegedly instructed CPA to stop calling his cell phone.  In Plaintiff's view, his call to CPA revoked any prior express consent CPA had to call him, whether on behalf of Comcast or ComEd.  Defendants argue that even if Plaintiff revoked consent to receive calls on the Comcast account, that revocation does not apply to the later placed ComEd account, and thus Defendants did not violate the TCPA by calling Plaintiff on behalf of ComEd. Plaintiff also raises one additional issue in his motion for partial summary judgment: whether the doctrine of issue preclusion bars Defendants from arguing that CPA did not use an ATDS to call his cell phone. The Court will address each issue in turn.

### A.    Revoking Consent

The TCPA prohibits the use of any automatic telephone dialing system to call cell phones without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A)(iii); *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017).  Violations of the TCPA may be redressed by a private right of action for damages, § 227(b)(3), which consist of either $500 for each violation or recovery for "actual monetary loss" resulting from the violation, "whichever is greater."  47 U.S.C. § 227(b)(3)(B).  The TCPA does not define what constitutes "prior express consent."  The Federal Communications Commission ("FCC"), the agency vested with authority to issue regulations implementing the TCPA, 47 U.S.C. § 227(b)(2), has shed some light on the issue. See *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014).  Under the Administrative Procedures Act, 47 U.S.C. § 402, otherwise known as the Hobbs Act, the Court is

bound by the FCC's orders, which are final and controlling.  See *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010).

The FCC clarified in a 2008 Declaratory Ruling that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 559, ¶ 1 (Jan. 4, 2008) ("*2008 TCPA Order*").  The FCC explained that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."  *2008 TCPA Order*, 559, 564, ¶ 9; see also *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 97 (N.D. Ill. 2013).

Additionally, the FCC ruled in its 2008 Declaratory Ruling that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call."  *2008 TCPA Order*, at 564, ¶ 10.  In 2015, the FCC further explained that consent given as part of a credit application "is valid not only for calls made by the original creditor, but also for those made by a third party collector acting on behalf of that creditor."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Am.*, 30 F.C.C. Rcd. 7961, 8028 (July 10, 2015) ("*2015 TCPA Order*")[4]; see also *Wright v. Nationstar Mortage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016).

---

[4] The Court notes that the FCC's 2015 Order has been appealed to the D. C. Circuit pursuant to the Hobbs Act.  See *ACA, Int'l v. FCC*, No. 15-1211 (D.C. Cir. argued Oct. 19, 2016).  Both parties discuss the 2015 Order, but neither side moves to stay this case pending resolution of *ACA International*.  Cf. *Ankcorn v. Kohl's Corp.*, 2017 WL 395707, at *3 (N.D. Ill. Jan. 30, 2017) (collecting cases in which courts have ruled on motions to stay in TCPA cases while *ACA International* remains pending).  The Court follows the parties' implicit suggestion that the issues in *ACA International* do not affect the outcome of the

Once consent is given, it is effective until it is revoked. See *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1065 (N.D. Ill. 2016) ("[C]onsent under the TCPA does not have an expiration date and is considered effective until revoked."). However, "[c]onsumers may revoke consent at any time and through any reasonable means," as long as the revocation "clearly expresses a desire not to receive further messages." *2015 TCPA Order*, at 7965, ¶ 2, 7996, ¶ 63; see also *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017).

With this background in mind, the Court turns to the parties' summary judgment arguments. Plaintiff argues that when he alleged instructed CPA to stop calling him, this instruction revoked any prior express consent CPA might have had, and this revocation applied to all matters for which CPA was attempting to contact him. Plaintiff contends that since the voicemails left by CPA only state an account reference number and not the name of the creditor, he "could not have deciphered that he was being pursued by CPA on" two separate creditor accounts, Comcast and ComEd.[5] Thus, in Plaintiff's view, he had no reason to believe that he needed to again tell CPA to stop calling him. Plaintiff focuses on the fact that CPA has the ability to perform searches to determine whether a debtor is already in its database and whether a debtor has multiple accounts with CPA, as well as the capacity to mark a number in a "do not call list." Plaintiff argues that when he allegedly revoked consent, CPA should have placed his cell phone number on a "do not call list" to prevent him from being called on all present and future creditor accounts placed with CPA.

---

present cross-motions for partial summary judgment and thus no stay is necessary here. See *Zeidel v. A&M (2015) LLC*, 2017 WL 1178150, at *8 (N.D. Ill. Mar. 30, 2017).

[5] CPA contends that it sent letters to Plaintiff on each account and thus Plaintiff was put on notice of CPA's attempts to collect for both Comcast and ComEd. Plaintiff asserts that he "may or may not have received" such letters. [64, at ¶ 18.]

Defendants, for their part, argue that when Plaintiff called CPA in early January 2013, he was calling solely about his Comcast account, as Defendants had not yet placed the ComEd account. Defendants contend that even if Plaintiff revoked his prior express consent for Comcast, the revocation does not apply to the later placed ComEd account. Defendants argue that since calls placed by a third-party debt collector on behalf of a creditor are treated as if the creditor itself placed the call, CPA's calls on behalf of ComEd are treated as if ComEd placed the call, and Plaintiff never revoked the consent that he allegedly gave to ComEd. According to Defendants, Plaintiff did not clearly express a desire not to receive calls on behalf of ComEd; at best, he implicitly revoked consent to receive calls on behalf of ComEd, which is not effective revocation. See *Cholly v. Uptain Grp., Inc.*, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015) (granting defendants' motion to dismiss as they relate to plaintiff's claim that she revoked consent and explaining that "plaintiff may have, at best, implicitly revoked her consent"). Additionally, Defendants assert that the fact that CPA has the technical capacity to place a cell phone number on a "do not call" list does not mean that the TCPA mandates that a debt collector cross-reference its creditor accounts for consumers who have revoked consent for one particular creditor.

The Court agrees with Defendants that revocation of consent for one creditor is not revocation of consent for all creditors, and thus even if Plaintiff can prove that he revoked his consent for CPA to call on behalf of Comcast when he called CPA in January 2013, he did not revoke his consent for calls from ComEd or from CPA on behalf of ComEd. When Plaintiff allegedly provided his cell phone number to Comcast and ComEd to set up accounts with these creditors, he granted each creditor prior express consent to call his cell phone regarding that creditor's specific debt. See *2008 TCPA Order*, 559, 564, ¶ 9 ("[T]he provision of a cell phone

number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number *regarding the debt*" (emphasis added)). When Comcast placed an account with CPA to have CPA collect the debt Plaintiff owed Comcast, CPA then acquired consent to call Plaintiff, but only regarding the Comcast account. See *Toney*, 75 F. Supp. 3d at 735 ("[A] third-party contractor performing services for the entity to which a plaintiff provided her cell phone number stands in the shoes of that entity in a consent analysis."); *Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *3–4 (N.D. Ill. July 7, 2014) ("[T]he scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes."). Thus, CPA did not have consent to call Plaintiff regarding another creditor's account, as "prior express consent provided to a particular creditor will not entitle that creditor (or third party collector) to call a consumer's wireless number on behalf of other creditors[.]" *2008 TCPA Order*, at 565, ¶ 10 n.38; see also *Andersen v. Harris & Harris, Ltd.*, 2014 WL 1600575, at *10 (E.D. Wis. Apr. 21, 2014). In other words, the consent was creditor-specific, as it was established through the creation of a specific debt. See *2008 TCPA Order*, at 564–65, ¶ 10 (emphasizing that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed").

When Plaintiff called CPA in January 2013 and allegedly asked CPA to stop calling his cell phone, he was returning a call that CPA made regarding the Comcast account, and therefore revoked his consent only for calls made on behalf of Comcast. That is, Plaintiff's revocation was creditor-specific, just as the consent was creditor-specific. Plaintiff could not anticipatorily revoke consent for all calls to be placed by CPA on behalf of potential future creditors, such as

ComEd. Rather, CPA separately acquired consent to call Plaintiff on behalf of ComEd when the ComEd account was placed, and that creditor-specific consent exists because CPA's calls on behalf of ComEd are treated as if ComEd itself placed the calls. See *Frausto v. IC System, Inc.*, 2011 WL 3704249, at *2 (N.D. Ill Aug. 22, 2011) (holding that the defendant debt collector was the equivalent of the party to whom the plaintiff had provided her cell phone number for purposes of the TCPA); *Greene v. DirecTv, Inc.*, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010) (plaintiff, who gave Equifax her phone number for a fraud alert, consented to an automated call made by defendant, a third party who received the phone number from Equifax). Plaintiff never clearly revoked the consent he allegedly gave to ComEd. Therefore, CPA cannot be held liable for its calls to Plaintiff on behalf of ComEd.

Although it may have been tedious for Plaintiff to discern that CPA was calling on behalf of two different creditors, this does not change the fact that CPA obtained Plaintiff's prior express consent separately through each creditor. Plaintiff still must revoke his consent separately for each creditor.[6] Nor is the Court persuaded by Plaintiff's argument that CPA was required to cross-reference accounts submitted by creditors to determine if a consumer had revoked consent for a different creditor simply because CPA has the technical capacity to do so. Rather, when Plaintiff allegedly revoked his consent for calls on behalf of Comcast, the TCPA simply required CPA to refrain from calling Plaintiff using an ATDS regarding the debt Plaintiff owed to Comcast.

Plaintiff argues that *Harris v. World Financial Network National Bank* supports his argument that his alleged revocation applied to both the Comcast and ComEd accounts with

---

[6] As previously noted, it is disputed whether Plaintiff gave consent to ComEd in the first place. However, this disputed fact does not matter for purposes of this analysis.

CPA. 867 F. Supp. 2d 888, 892–97 (E.D. Mich. 2012). In *Harris*, a debtor who was not party to the lawsuit opened accounts with three separate creditors. *Id.* at 890. The debtor provided each creditor with a phone number that belongs to the plaintiff. *Id.* The debtor then fell past due on all three of her accounts. *Id.* at 891. When the plaintiff received a call from a debt collector regarding the first creditor account, he informed the debt collector that it should stop calling him because it was calling the wrong number. *Id.* The debtor collector removed the number from the specific creditor account for which it had called, but it did not remove the number from the third-party debtor's two remaining accounts or from its entire calling system, even though it had the capacity to do so. *Id.* The debtor collector then continued to call the plaintiff regarding the third-party debtor's two remaining accounts. *Id.* The *Harris* Court held that the debt collector's calls regarding the two remaining accounts violated the TCPA because at that point, the debt collector had been put on notice that plaintiff's phone number was not associated with the third-party debtor, and the debt collector was in a better position than the plaintiff to review its system to ensure that the plaintiff's number was not incorrectly tied to any of the third-party debtor's other remaining accounts. *Id.* 896.

Plaintiff contends that the facts of *Harris* are "nearly identical" to those here. The Court disagrees and concludes that *Harris*, which is not binding on this Court, can be distinguished from the case at hand. *Harris* involved "wrong number" calls to a plaintiff who had never provided his prior express consent to be called by the creditors or by the debt collector on behalf of the creditors. See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (explaining that if the original subscriber of a cell phone number gives consent but then the number is later reassigned to a new subscriber and the creditor's contacts file is out of date, the creditor does not have the consent of the new subscriber); *2015 TCPA Order*, at 8000–01, ¶ 73

(concluded that in determining whether there was "prior express consent of the called party," the term "'called party' is best understood to mean the subscriber to whom the dialed wireless number is assigned because the subscriber is 'charged for the call' and * * * is the person whose privacy is interrupted by unwanted calls"). The holding in *Harris* is not based on the plaintiff's revocation of his consent, as the debt collector never had the plaintiff's consent in the first place. Rather, the holding in *Harris* centers on the fact that the debt collector was put on notice that the plaintiff's phone number was not associated with the debtor on the accounts and therefore that it did not have the plaintiff's consent to call about any of the debtor's accounts.[7]

Additionally, *Harris* did not contain the temporal separation between the creditor accounts, which is present in the case at hand. Here, the ComEd account was placed with CPA *after* Plaintiff's alleged revocation of consent for his Comcast account. Thus, at the time of Plaintiff's alleged revocation, CPA did not yet have consent to call Plaintiff on behalf of ComEd. And Plaintiff could not have clearly expressed a desire revoke consent that CPA did not yet have. In contrast, the debt collector in *Harris* had the third-party debtor's consent for each of the three separate creditor accounts when the plaintiff put the debt collector on notice that it was calling the wrong number.

For these reasons, the Court concludes that Plaintiff's alleged revocation of consent in January 2013 revoked consent only for CPA's calls on behalf of Comcast and did not revoke any alleged consent stemming from Plaintiff's debt with ComEd. Therefore, CPA cannot be held liable for calls to Plaintiff on behalf of ComEd.

---

[7] Plaintiff argues that a creditor may call a wrong number provided by a previous subscriber to the cell phone number because there is a one-call safe harbor for creditors or debt collectors who did not know that the cell phone number had been reassigned. See *2015 TCPA Order*, at 8009, ¶¶ 89–90. However, this one-call window is merely a safe harbor from liability, and it does not give the creditor or debt collector the new subscriber's consent to call his cell phone number regarding the old subscriber's debts.

### B.     Issue Preclusion

Next, Plaintiff argues that under the doctrine of issue preclusion, the Court should conclude that CPA used an ATDS to call his cell phone in violation of the TCPA.  Plaintiff contends that the issue of whether Dial Connection, the dialing system used by CPA to call out on collection accounts, is a predictive dialer and therefore an ATDS already has been adjudicated against CPA in *Schumacher v. Credit Protection Association*, 2015 WL 5786139, at *6–8 (N.D. Ill. Sept. 30, 2015).  In Plaintiff's view, since *Schumacher* held that "Dial Connection is a predictive dialer and therefore an ATDS," 2015 WL 5786139, at *8, CPA should thus be precluded from relitigating the issue of whether Dial Connection is an ATDS.[8]

The doctrine of issue preclusion, or collateral estoppel, prevents the relitigation of issues resolved in an earlier suit if the following elements are met: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action."  *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).  Plaintiff argues that the issue raised by CPA in this case—whether Dial connection is a predictive dialer and therefore an ATDS—is the same issue that was decided in *Schumacher*.  Plaintiff further argues that the issue was actually litigated and essential to the court's final judgment in *Schumacher* and that CPA was fully represented by counsel in *Schumacher*.

---

[8] As discussed above, for TCPA liability to attach, the calls must have been placed using an automated telephone dialing system or ATDS.  47 U.S.C. § 227(b)(1)(A)(iii); *Bijora*, 855 F.3d at 798.  Congress believed that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls, that such calls were costly and that such calls were inconvenient.  *Jamison*, 290 F.R.D. at 9) (citing *2008 TCPA Order*, at 559–60, ¶ 2).  The Seventh Circuit has further explained that unlike a human caller who would realize if there was a problem with the call, such as if it had the wrong number, "predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master."  *Soppet*, 679 F.3d at 639.

Defendants respond that Plaintiff's motion is void of facts relating to the dialing system used to call his cell phone and that Plaintiff has failed to establish that the dialer used in *Schumacher* was used and operated in the exact same way in the instant case. Defendants contend that Plaintiff only has established that the dialing system has the same name as the system in *Schumacher* without establishing that it was used in the same time frame as that in *Schumacher* or that it is in fact the same system. In Defendant's view, just because the system bears the same name does not mean it can be deemed an ATDS without any review or analysis by this Court.

The Court agrees with Defendants that Plaintiff has failed to establish the factual basis necessary to invoke issue preclusion on the issue of whether CPA used an ATDS to call Plaintiff in this case. In his reply brief, Plaintiff attempts to offer new facts purporting to establish that the ATDS used in *Schumacher* is the same system the CPA used in this case. Plaintiff attaches an additional exhibit ("Exhibit 11") to his reply brief, and in his reply brief, he cites to this new exhibit and directly to raw record materials rather than to his Local Rule 56.1 statement. However, Plaintiff's attempt to offer new facts in his reply brief violates Local Rule 56.1.

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The nonmovant must then file "a concise response to the movant's statement," admitting or denying each of the movant's factual statements and providing a statement of any additional facts that may require the denial of summary judgment. L.R. 56.1(b)(3). In response, the moving party may deny the additional facts to prevent them from being deemed admitted. L.R. 56.1(a). Local Rule 56.1, however, does not permit the moving party to submit additional facts. In other words, the rule "does not allow the movant to

make successive filings of fact to which the non-movant has no opportunity to respond." *Developers Sur. & Indem. Co. v. Kipling Homes, L.L.C.*, 2013 WL 315960, at *2 (N.D. Ill. Jan. 28, 2013) (citation and internal quotation marks omitted); see also *Premier Capital Mgmt., LLC v. Cohen*, 2008 WL 4378313, at *2 (N.D. Ill. Mar. 24, 2008) (declining to consider movant's "supplemental statement of undisputed material facts" tendered on reply).

The Seventh Circuit has repeatedly held that "district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011). Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).

Thus, the Court will not consider the new facts or new exhibit submitted with Plaintiff's reply brief, which were not included in Plaintiff's Local Rule 51.6(a) Statement of Facts [55]. See *Kipling Homes, L.L.C.*, 2013 WL 315960, at *2 (declining to consider new facts and documents contained in the moving party's summary judgment reply brief); *Hernandez v. Cottrell, Inc.*, 2014 WL 1292336, at *2 (N.D. Ill. Mar. 31, 2014) (refusing to consider new facts injected into defendant's summary judgment reply brief). "It is elementary that parties may not raise new arguments or present new facts in their reply, thus depriving their opponent of the opportunity to respond." *Weizeorick v. ABN AMRO Mortg. Grp., Inc.*, 2004 WL 1880008, at *2 (N.D. Ill. Aug. 3, 2004) (citing *Multi-Ad Servs., Inc. v. N.L.R.B.*, 255 F.3d 363, 370 (7th Cir. 2001)). The Court emphasizes that the "driving force" behind this approach is not to hinder the presentation of relevant facts, but to prevent a surprise addition of facts to which the Defendants have had no opportunity to respond. *Maher v. Rowen Grp., Inc.*, 2015 WL 273315, at *8 (N.D.

Ill. Jan. 20, 2015). Without the new facts in his reply brief, Plaintiff has offered no factual basis for his argument that the dialing system used by CPA in *Schumacher* is the same system the CPA used to call Plaintiff in this case, and thus Plaintiff's motion for partial summary judgment on this basis is denied.[9]

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for partial summary judgment [53] is denied, and Defendants' motion for partial summary judgment [59] is granted. This case is set for further status hearing on September 12, 2017 at 9:00 a.m.

Dated: August 23, 2017

Robert M. Dow, Jr.
United States District Judge

---

[9] The Court also notes that Plaintiff violated the local rules by citing to raw record materials in his reply brief, rather than to his Local Rule 56.1 statement. This violation of Local Rule 56.1, standing alone, would be enough to deny Plaintiff's motion for partial summary judgment. See *Sledge v. Bellwood Sch. Dist. 88*, 2011 WL 2457920, at *2 (N.D. Ill. June 17, 2011) (denying summary judgment motion based on movant's violation of Local Rule 56.1); *Daoust v. Abbott Labs.*, 2006 WL 2711844, at *4 (N.D. Ill. Sept. 19, 2006) ("Citing directly to the record in the memorandum statement of facts, as [the movant] does here, rather than citing to its 56.1(a)(3) statement, negates the purpose of the summary judgment exercise.").